The Chicago and Northwestern Railway Company

*v.*

Samuel W. Chapman.

*Filed at Ottawa May 14, 1890.*

1. Carriers — *limiting liability by contract — the statute construed.* The act of March 27, 1874, relating to common carriers, and section 33 of chapter 114, on the same subject, do not prohibit common carriers from limiting their common law liability by contract with the owner of property delivered for transportation. They only prohibit the limitation of the carrier's liability by a stipulation or clause expressed in the receipt given for the property.

2. A railway carrier in many respects may, by express contract, limit its strict common law liability. It may, by special contract, limit its liability to such damage or loss as may occur on its own line of carriage, and against loss by fire without its fault; and its liability may thus be

limited as an insurer, and against other loss not attributable to its negligence or that of its servants; and it may require the value of goods offered for transportation to be fixed by the shipper, to protect itself against fraud in case of loss.

3. But in this State a common carrier can not, even by express contract, exempt itself from liability resulting from gross negligence or willful misconduct committed by itself, or its servants or employes; nor can it limit its liability in amount, as against damages resulting from such negligence.

4. Nor does the law authorize common carriers to fix, arbitrarily, the value of goods delivered to them for transportation, and thereby limit their liability in case of a loss. If the value is agreed on, and the contract of shipment is based on such value, the amount thus fixed would ordinarily determine the liability of the carrier. But if untruthfully given in respect to property that the carrier had less opportunity to inspect or know the value of than the shipper, it would not estop the carrier from showing the value was less than that fixed.

5. A railway company, on the delivery of a number of horses to it for transportation, gave to the owner's agent a contract or receipt, in which it was stated, that in consideration of special rates, etc., the company assumed no liability on horses for more than $100 per head, unless by special agreement noted thereon: *Held*, the clause in the contract attempting to limit a recovery to $100, as against gross negligence, was void; but if the injury to the property, and the damages resulting, had been caused by any casualty against which the carrier might contract, the limitation, if knowingly assented to by the shipper, might govern.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kane county; the Hon. Isaac G. Wilson, Judge, presiding.

The following statement of facts taken from the opinion of the Appellate Court in this case is accurate and sufficiently full:

In June, 1887, and for a year or more before that time, appellee was the owner of a valuable pacing race horse named "Riley," which had been kept and used for racing purposes for the years 1886 and 1887. In June, 1887, plaintiff's horse, with many others, was in the races then held at Rockford, Illinois. The races were brought to a close on the 4th of June, 1887, and the owners of the various horses were ready to go to Freeport, where the next meeting or series of races was to

be held in a short time. While the owners of the horses were still on the race track, or at the grounds where the races were held, the agent of the appellant went in person to the race track and had a consultation with the owners and those in charge of the horses, and asked them to ship to Freeport over the Chicago and Northwestern railway, and promised them that if they would ship their horses and baggage over his road he would give them a special train for their horses, and attach a passenger coach to it for the men. This proposition was accepted by the owners and men in charge of the horses, and a special train was made up, consisting of eight or ten cars of horses, and the passenger coach. The horses were placed in the cars and billed for Freeport, but whether the horses were billed before or after they were put in the cars does not appear, nor is it material which was done first.

James Longshore was in charge of plaintiff's horse, the plaintiff being absent. A bill of lading was made out and handed to plaintiff's agent. This bill of lading was headed or entitled thus: "Chicago and Northwestern Railway Company. Live Stock Contract." Among other things this contract had the following provision, viz: "No liability will be assumed on horses or valuable live stock for more than $100 per head, unless by special agreement noted hereon, and agents are not permitted to receive or ship such valuable animals until a proper contract or release is signed by the owner or shipper thereof; and it is agreed between the owner of these animals and the said railway company, that in case of accident, resulting in injury to the animals, the value thereof shall in no case be estimated at more than $100 for each animal so injured." Another provision of the contract read thus:

"Rockford, Ill., Station, *June 4, 1887.*

"Received of J. Longshore, four horses, to be delivered to J. Longshore at Freeport station at special rates, being $10 per car for horses, mules, etc. In consideration of which, and for other valuable considerations, it is hereby mutually agreed

that said company shall not be liable for loss by jumping from the cars, delay of trains not caused by negligence as aforesaid, or any damage said property may sustain, except such as may result from a collision of the trains, or when the cars are thrown from the track in course of transportation."

There was also a provision in this contract entitling one man with two or three cars to a pass to go with his stock, and in certain cases one man with one car of stock might be entitled to a pass. These are all the provisions of this contract that are involved in the controversy.

At the time this bill was made out and handed to Longshore, the agent asked him no questions as to the value of the horse, nor did Longshore give him any information on that subject, so far as the records show. This contract was signed by the agent of the company and by Longshore, as agent of Chapman, the owner. Soon after, the train with the horses and men started on its way to Freeport, and soon after it started, commenced going at a very rapid rate of speed. The witnesses, several in number, all agree that the train was running from thirty to forty-five miles an hour. This they determined by timing the train with their watches. One witness testifies the train was running at the rate of a mile in one minute and eleven seconds. While this rate of speed was being made, the train collided with a construction train near Ridotte. The construction train was backing down, and met the special train containing the men and horses, on a curve, without any kind of warning to either train,—at least none is shown in the record. The result was so stated by some of the witnesses that "everything was all smashed up." Plaintiff's horse was so injured that he is wholly worthless. No explanation was given or offered, on the trial below, in justification of the conduct of the defendant's servants, either for running the train at so high a rate of speed, or for the collision of the two trains. The crews of both trains were discharged by the officers of the company the next day after the collision. The evidence in the

case clearly establishes very gross, if not reckless and criminal, negligence on the part of the servants in charge of these trains or of those directing the movements of trains. After the injury to plaintiff's horse, the defendant tendered the plaintiff $110, and insisted, under the terms of the bill of lading or shipping contract, that $100 was the limit of its liability. This amount the plaintiff declined to accept, and brought suit for the full value of his horse.

The declaration contained two counts. The first count recited the contract in full, and the second only the clause limiting the defendant's liability to $100. Both counts alleged that the accident and injury to the plaintiff's horse were caused by the gross negligence of the defendant's servants operating the trains, and that the contract limiting the value of the horse and liability of the defendant to $100 was no protection to the defendant, when the injury was caused by the gross negligence of the defendant. The pleas were the general issue, and two pleas of tender and payment into court of $110.

On the trial it was stipulated that Mr. Burton Johnson, the assistant general freight agent of the railway company, would, if present, testify, that at the time this freight was shipped at that station the company had two classifications under which live stock was shipped. In one class the shipper was required to sign a contract fixing the amount of damages that he could recover, in case of loss or injury to a single horse, at $100; that they also had another classification, for which a higher rate of freight was charged, under which the horses or live stock could be shipped without any limitation to the amount of damage that could be recovered in case of their loss or injury. The defendant also offered to prove that these classifications were shown by lists published by the company under the inter-State law. The western classification of the inter-State law was offered in evidence, as follows: "Live stock in car-loads, limited under contract.—See tariff. Live stock in car-loads, carrier's risk.—See tariff."

The plaintiff, and his agent, Longshore, both testified that they never knew or heard of any other mode or classification or rate for shipping live stock over defendant's road except the one used by the company at the time of the accident to plaintiff's horse, and that the defendant, nor its agent, had given them any notice of any other or different mode or rate of shipment than the one used on this occasion. Chapman testifies he had frequently shipped horses over defendant's road before, and had always shipped under the contract used on this occasion, and did not know they had any other.

On the trial, plaintiff called a number of witnesses acquainted with the value of this horse. They all placed his value at $3500 to $4000. One witness for the plaintiff placed his value at $3000 to $4000. One witness, only, was called for defendant, who, after having heard of the speed of the horse from other witnesses, placed his value at from $5000 to $6000 if he had been sound, he supposing the horse had some blemishes about one of his limbs that affected his value somewhat, but he was the only witness who knew of any supposed blemish. The proof also showed that the horse was fast, and that he had a record of 2:20, and won several races at that speed, and from that to 2:25.

The case was tried before a jury, and the plaintiff had a verdict for $3290, and after overruling a motion for a new trial, the court rendered judgment for the plaintiff on the verdict.

Numerous errors are assigned, but they are all involved in a single question, and that is, whether the contract of shipment signed by both parties, limiting the right of recovery for the horse to $100, when the proof shows he was injured by the gross negligence of the defendant, can be interposed as a successful and valid defense, so as to prevent the plaintiff from showing and recovering the full value of his horse.

The court below, on behalf of the plaintiff, instructed the jury, in substance, that while it was lawful for the defendant to enter into the contract shown in the case, still it was against

public policy and the law to allow it to be available as a defense in case the proof should show the injury to the horse was caused by the gross negligence of the defendant's servants, and that if the proof showed the defendant guilty of gross negligence, then the jury should award the plaintiff the full value of his horse, notwithstanding the contract.

The defendant asked the court to instruct the jury, "that if they believed, from the evidence, that the defendant had two classes of rates, the lesser rate being based upon a valuation as prescribed in this contract, and a higher rate for more valuable horses, based upon a valuation to be fixed by special agreement, signed by the shipper or owner of the animal, and that the contract in this case was based upon the lower rate, and thereby secured the shipment of the horse at a less rate than he could have done under a special agreement, then the plaintiff will be limited, in his recovery upon the contract, to the value of the horse as fixed therein," but the court refused to give this instruction as asked, but added to it the following words, "provided the injury complained of was not occasioned by the negligence of the defendant," and then the court gave the instruction as modified. The defendant excepted to the giving of the instruction as asked for the plaintiff, and also to the refusal of the court to give its instructions as asked, and to the action of the court in giving the instruction as modified.

The judgment of the circuit court was affirmed by the Appellate Court, and the railway company prosecutes its further appeal to this court.

Mr. W. C. GOUDY, Mr. W. B. KEEP, and Mr. R. N. BOTSFORD, for the appellant:

The appellee was not entitled to recover more than $100 under the contract made for shipment. The contract that the value of the horse, or the liquidated damages in case of any injury to it, should be $100, was valid. *Hart* v. *Pennsylvania Co.* 112 U. S. 331.

An agreement as to the value of property shipped, or liquidating the damages recoverable for injury to it, is valid when the goods are lost by the negligence of a carrier, and does not come within the rule that a carrier can not limit his liability for negligence. This is well established. *Hart* v. *Pennsylvania Co.* 112 U. S. 331; *Insurance Co.* v. *Transportation Co.* 117 id. 322; *Graves* v. *Railroad Co.* 137 Mass. 37; *Harvey* v. *Railroad Co.* 74 Mo. 538; *Brown* v. *Railroad Co.* 18 Mo. App. 568; *Ghormley* v. *Dinsmore,* 53 N. Y. 37; *Hill* v. *Railroad Co.* 144 Mass. 284; *Railway Co.* v. *Henlein,* 52 Ala. 606; *Squire* v. *Railroad Co.* 98 Mass. 245; *Maginn* v. *Dinsmore,* 70 N. Y. 411; "*The Hadji,*" 18 Fed. Rep. 459; "*The Lydian Monarch,*" 23 id. 298; *Elkins* v. *Transportation Co.* 81 Pa. St. 315; *Hill* v. *Railroad Co.* 144 Mass. 284; *Belger* v. *Dinsmore,* 51 N. Y. 166; *Steers* v. *Steamship Co.* 57 id. 1; *Muser* v. *Holland,* 17 Blatchf. 412; *Hopkins* v. *Westcott,* 6 id. 64; *Wetzell* v. *Dinsmore,* 54 id. 496; *Earnest* v. *Express Co.* 1 Woods, 573.

Mr. A. H. Barry, and Messrs. Sherwood & Jones, for the appellee:

There was no consideration for the contract. It is a fraud on the plaintiff, and is not, in law, of any binding force.

A contract of a common carrier will not be construed as exempting from liability for negligence, unless it is expressed in unequivocal terms. *Maynard* v. *Railway Co.* 71 N. Y. 180; *Halsapple* v. *Railway Co.* 3 Am. and Eng. Ry. Cas. 487; *Sager* v. *Railroad Co.* 31 Me. 228:

In this State a railway carrier can not contract against liability, or limit its liability against gross negligence or willful acts. *Railroad Co.* v. *Adams,* 42 Ill. 474; *Railroad Co.* v. *Read,* 37 id. 485; *Express Co.* v. *Stettaners,* 61 id. 184; *Oppenheimer* v. *Express Co.* 69 id. 62; *Boscowitz* v. *Express Co.* 93 id. 523; *Black* v. *Transportation Co.* 55 Wis. 319; *Bank* v. *Express Co.* 93 U. S. 174; *Moulton* v. *Railway Co.* 31 Minn. 85; *Express Co.* v. *Blackman,* 28 Ohio St. 144; *Railroad Co.*

v. *Simpson*, 30 Kan. 645; *Grogan* v. *Express Co.* 114 Pa. St. 114; *Orndorf* v. *Express Co.* 3 Bush, 194; *Railroad Co.* v. *Abels*, 60 Mo. 1017; *Railroad Co.* v. *Little*, 71 Ala. 611.

Mr. Chief Justice Shope delivered the opinion of the Court:

This is an action on the case, by appellee, against appellant, as a common carrier, to recover damages for the loss of the plaintiff's horse while being shipped over appellant's railroad. There is little dispute as to the facts of the case. There was ample evidence to show gross negligence on the part of the servants of the defendant, from which the injury to the horse resulted.

By the ruling of the trial court in giving an instruction for the plaintiff, and in the modification of one asked by the defendant, the question of law is presented, whether it is competent for a railway carrier to limit or restrict, by contract, its liability for an injury to property, during its transportation, against the gross negligence of the carrier or its servants.

The act in respect of common carriers, approved March 27, 1874, provides: "That whenever any property is received by a common carrier to be transported from one place to another, within or without this State, it shall not be lawful for such carrier to limit his common law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property." This is substantially re-enacted in section 33 of chapter 114, relating to railroads. These statutes do not, in terms, prohibit common carriers from limiting their common law liabilities by contract with the owner of property delivered for transportation. Formerly, the restriction of a carrier's liability, when expressed in a mere receipt, often gave rise to the question as to whether the shipper had knowingly assented thereto, and this enactment was doubtless intended to obviate the difficulty growing out of that condition. In many respects a railway carrier may, by express contract,

limit its strict common law liability. It may, by special contract, limit the liability to such damage or loss as may occur on its own line of carriage. *Illinois Central Railroad Co.* v. *Frankenberg*, 54 Ill. 88; *Chicago and Northwestern Railway Co.* v. *Montfort*, 60 id. 175; *Field* v. *Chicago and Rock Island Railroad Co.* 71 id. 458; *Erie Railroad Co.* v. *Wilcox*, 84 id. 239; *Wabash, St. Louis and Pacific Railway Co.* v. *Jaggerman*, 115 id. 407. The carrier may limit its liabilities against loss by fire without its fault. (*Van Schak* v. *Northern Transportation Co.* 3 Biss. 394.) And the liability may thus be limited as an insurer, and against other loss not attributable to its negligence or that of its servants, and may require the value of goods offered for transportation to be fixed by the shipper, to protect itself against fraud in case of loss.

The courts of this State have never held that the carrier may limit or restrict its liability for loss or damage resulting from its own gross negligence or the gross negligence of its servants. On the contrary, it has been repeatedly and uniformly held that it can not do so, even by express contract with the shipper. The question first arose in *Illinois Central Railroad Co.* v. *Morrison*, 19 Ill. 136, and it was there said: "We think the rule a good one, as established in England and in this country, that railroads have the right to restrict their liabilities as common carriers by such contract as may be agreed upon specially, they still remaining liable for gross negligence or willful misfeasance, against which good morals and public policy forbid they should be permitted to stipulate." And substantially the same language is used in *Illinois Central Railroad Co.* v. *Read*, 37 Ill. 484, and in *Illinois Central Railroad Co.* v. *Adams*, 42 id. 474. In *Illinois Central Railroad Co.* v. *Smyser & Co.* 38 Ill. 354, it was held that a railroad company may restrict its liabilities for loss or injury occurring during the transportation of property, the carrier being still held liable for gross negligence or willful misfeasance. So in *Illinois Central Railroad Co.* v. *Adams, supra,* it is said: "That although

the railroad company might protect itself by contract against certain risks assumed by common carriers and belonging to their vocation, it is contrary to good morals and public policy that they should be allowed to stipulate against their own gross negligence, or that of their employes, or their willful default." In *Oppenheimer* v. *United States Express Co.* 69 Ill. 62, the court holds that the contracts exempting carriers from liabilities are not to be construed as providing against loss or injury occasioned by actual negligence on their part. In the subsequent case of *Arnold* v. *Illinois Central Railroad Co.* 83 Ill. 273, it was said: "The doctrine is settled in this court that railroad companies may by contract exempt themselves from liabilities on account of the negligence of their servants, other than that which is gross or willful."

In the *Read case, supra,* the question arose where the plaintiff was riding on a free ticket, on the back of which was an indorsement to the effect that the person accepting the same assumes all risks of accident, and expressly agrees that the company shall not be liable, under any circumstances, for injury to the person or property of the passenger while using the ticket. It was held that the acceptance and use of the ticket made the indorsement thereon a special contract, but that the contract did not exempt the company from liability for injury caused by gross negligence.

In *Erie Railroad Co.* v. *Wilcox, supra,* we said: "The law has wisely, and for reasons that concern the public welfare, inhibited a common carrier of passengers or freight from contracting against its own negligence, or that of its servants and employes." See, also, *Toledo, Wabash and Western Railway Co.* v. *Beggs,* 85 Ill. 80.

In *Adams Express Co.* v. *Stettaners,* 61 Ill. 184, goods were shipped from Chicago to New York, worth in fact $400, for which the company gave the shipper a receipt limiting its liability to $50 in case of loss, of which the shipper had notice. It was there said: "Even if it should be conceded that the

shipper must be considered as having consented to the terms of the bill of lading, we can not hold the carrier excused from the exercise of reasonable and ordinary care. Courts have often had occasion to express regret that common carriers have been permitted, even by contract, to excuse themselves from the obligations imposed by the salutary rules of the common law. * * * It is very unreasonable in the common carrier to say that it will in no event be liable beyond the sum of $50, in the absence of a special contract, though it may have received much more than that sum merely in the way of freight. * * * It would be very easy for them to require the shipper to specify the value of the merchandise, * * * making their charges in proportion to the liability. If the shipper should falsely state the value, he could not complain of being held to his own valuation. In order to prevent the carrier from releasing himself from all liability, courts have laid down the rule above stated, that he can not, even by contract, exempt himself from the exercise of reasonable care." And the same rule was laid down in *Boscowitz* v. *Adams Express Co.* 93 Ill. 523, and it was there held that the defendant was liable for the full value of the goods, if the loss was owing to negligence on the part of the railway company, who was the servant of the express company in the transportation of the goods.

We have thus given an epitome of cases decided by this court, to which others might be added, for the purpose of showing that we are committed to the doctrine that a common carrier can not, even by express contract, exempt itself from liability resulting from the gross negligence or willful misconduct committed by itself or its servants or employes. Whatever may be the rule elsewhere, in this State the common carrier can not contract for exemption from responsibility for a failure on its part, or that of its servants, to exercise ordinary care in the transaction of its business. If the carrier may by contract limit its liability for gross negligence or willful misfeasance to any extent, it may contract for total exemp-

tion. A contract for exemption from liability for its torts being void, as against public policy, it can not shield itself as to any portion of the damages to person or property occasioned by its gross negligence or willful misconduct. As we have seen, it may protect itself against fraud by requiring the consignee to state the value of the thing shipped; but when it receives property for transportation it must exercise reasonable care until it reaches its place of destination, and will not be permitted to absolve itself from that responsibility.

By the strict rule of the common law, the carrier was liable for injuries resulting from causes beyond his control, and which were not the result of his act or the omission of his duty, the exception being, that he was not liable for injury or loss resulting from the act of God or the public enemy. Thus, he must account for goods received for transportation, even though they be destroyed by fire without his fault. The rule has generally been so far relaxed that the carrier may by special contract exempt himself from this strict liability imposed by the common law, but the weight of authority, in our judgment, holds, as this court has uniformly held, that he may not exempt himself from liability for damages resulting from the gross negligence or willful misconduct of himself or of his servants. The law does not authorize common carriers to fix, arbitrarily, the value of goods delivered to them for transportation, and thereby limit their liability in case of loss. If a value should be fixed by the carrier, as before stated, and the contract of shipment was based thereon, the amount thus fixed would ordinarily determine the liability of the carrier. It would not, however, if untruthfully given in respect of property that the carrier had less opportunity to inspect and know the value of than the shipper, estop the carrier to show that the value was less than that fixed. It can not be said that the clause in this contract attempting to limit a recovery to $100, amounts to an admission on the part of the shipper that the horse was worth no more than that sum. It was not made by the shipper or

intended as a statement of the value of the property, but was intended to fix a limit to the defendant's liability in case of loss; and if the contract had not been void, and had been knowingly entered into by the shipper or his authorized agent, it might have furnished the measure of recovery.  If the injury to the property and damage resulting had been caused by any casualty against which the carrier might contract, the tender made by the defendant of the amounts named in the contract might have been a bar to a recovery, if it had been kept good. It is manifest from the foregoing that the tender was not effectual to defeat a recovery by the plaintiff.

As before said, we are not unmindful that a contrary rule has been announced by courts of the highest respectability, and among them the Supreme Court of the United States. Notwithstanding the great respect we entertain for the very learned and eminent tribunals which have thus held, we are so strongly committed to the doctrine before announced that we feel compelled to adhere to the rule so long and firmly established in this State, and notwithstanding the persuasive weight of the rulings of these eminent tribunals, and of the reasons given for their decisions, we are still satisfied that the rule laid down in this State is based upon sound reason and a wise public policy, and is also supported by the decided weight of authority.

In this case, the agent of appellant came to the agent of the appellee and others, and offered special inducements to ship their animals over appellant's road.   No representation was made by appellee or his agent to induce the fixing of the value, either of the property shipped or of the services of appellant for its carriage.   It is insisted that the company had two classifications at the time, under which live stock was shipped; that one limited the amount of recovery for a horse to $100 in case of loss, and that in the other class there was no limitation, but a higher freight rate was charged.   At the time of this shipment no notice was given of any such classification.

The appellant's agent received the property, charged what he saw proper, and made out the bill of lading without asking any questions as to the value of the property. The fact that such classification existed could in no way affect the plaintiff's right of recovery, unless notice thereof had been brought home in some way to the plaintiff or his agent. But it can not avail, in any event, as against the right of recovery here. Plaintiff was guilty of no misconduct which would estop him from asserting his right to recover the value of his property, and it was unlawful for the railway carrier to contract for exemption from liability resulting from the gross negligence of its servants.

Some other minor points are made, which, however, have been disposed of by what has already been said, and no further discussion need be indulged.

We find no substantial error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*