## Wabash Railroad Company v. Lloyd W. Brown et al.

1. WAIVER—*Of Conditions in Freighting Contract.*—Where a clause in a contract of shipment provided that all claims for injuries to stock should be made in writing and verified by an affidavit and delivered to the general freight agent of the company within five days after the stock was removed from the car, *it was held* that the company, by receiving a claim not verified according to the contract without objection and acting upon the same, waived the condition.

2. COMMON CARRIERS—*Right to Contract Against Liability.*—A common carrier can not shield itself by contract against any portion of the damages inflicted by gross negligence upon property in its care and being transported by it.

3. RAILROAD COMPANIES—*Contracts of Exemption from Liability.*— It is unlawful for the railroad company to contract for exemption from liability resulting from the gross negligence of its servants.

**Memorandum.**—Action for damages for injury to stock. Appeal from the County Court of Morgan County; the Hon. O. P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The statement of facts is contained in the opinion of the court.

GEO. B. BURNETT, attorney for appellant.

E. L. McDONALD and J. M. BROWN, attorneys for appellees.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The appellee shipped a number of high bred valuable cattle on appellant's road, under a special contract signed by the parties, the material provisions of which are as follows:

"Sixth. In consideration of this agreement, the party of the second part hereby releases the party of the first part, and connecting lines, from all claims for damages that may be occasioned by the burning of hay, straw or other material placed in said car or cars, for the purpose of feeding or bedding said stock."

\* \* \* \* \* \* \*

"Tenth. In consideration of the rate aforesaid, it is further agreed that no claim for damages which may accrue to the party of the second part under this contract, shall be allowed or paid by the party of the first part, or sued for in any court by the party of the second part, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the party of the second part, or his or their agent, and delivered to the general freight agent of the party of the first part, at his office in the city of St. Louis, within five (5) days from the time said stock is removed from said cars."

"Eleventh. It is agreed that neither the party of the first part, nor any connecting line, shall be liable for more than the sum of $100 on account of loss or injury of any one horse or other animal received or carried by the party of the first part under this contract."

At each end of the sixth clause is a bracket in red ink, and on the margin of the contract is written in red ink the following: "My special attention has been directed to clause No. 11, limiting the liability in case of accident, and to which condition I knowingly subscribe."

Hay used for feeding or bedding the cattle in the car took fire, and one of the animals, a valuable cow, called the Fourth Duchess of Hilsdale, was badly burned about her legs, belly and lower part of her body. Her bag sloughed away and was totally destroyed. The action was brought to recover damages thus occasioned.

The jury found for the appellee and assessed the damages at $650. It is not urged that the amount is excessive. It may be conceded as urged by the appellant's counsel, that the effect of the special contract is to exempt the appellant's company from liability, except for damages resulting from the gross negligence or willful misconduct of its servants, and we may add that it has no effect to relieve it from damages occasioned by the gross negligence of its servants. Arnold v. R. R. Co., 83 Ill. 273; C. & N. W. R. R. Co. v. Chapman, 133 Ill. 96.

Appellant insists that there is neither allegation nor proof of such gross negligence or willful misconduct.

The proof is that the car containing the cattle in which was also hay for feeding and bedding them was placed by the appellant's servants the second or third car from the engine in a train of twenty-six cars, and that it was the only car containing stock in the train. The evidence, though circumstantial, was sufficient to warrant the jury in concluding that fire was communicated from the engine to the hay in the car. It was not attempted to prove that the engine was provided with appliances of any kind or character to prevent the escape of fire, or that it was in the charge of a competent or skillful engineer.

The fact that fire was communicated from the engine to the hay in the stock car, was evidence of negligence on the part of the appellant company on the authority of Bass v. C., B. & Q. R. R. Co., 28 Ill. 9, and I. C. R. R. Co. v. Mills, 42 Ill. 407, if such fact was not full *prima facie* evidence to charge the appellant with negligence as a matter of law, by the operation and effect of Sec. 104, Chap. 114 of the Revised Statutes (S. & C. Statutes). The appellee contended that the appellant company was guilty of gross negligence, in

fact, in putting a stock car which it knew contained inflammable feed and bedding in such close proximity to the engine, when it might have been removed many car lengths therefrom.

It is manifest from the sixth clause of the contract that the appellant company had notice that hay or straw or other inflammable material was to be placed in the car and was fully aware of the danger that fire might be communicated to such combustible material. It recognized and sought to contract against such danger, yet voluntarily placed the car in close proximity to the engine, which might well be deemed negligence. Then; that the appellant company was negligent in point of law, and as matter of fact, was clearly established. The degree of negligence, whether inadvertent or gross, was a question of fact for the jury under proper instructions. The court in instructions both in behalf of appellee and of the appellant, carefully and properly defined gross negligence, and expressly charged the jury that their verdict should be for the appellant company, unless the preponderance of the evidence showed that its servants had been guilty of gross negligence in the transportation or management of the stock or train. The jury found that the negligence of the appellant company was gross in its character and degree. It can not be said that the finding was manifestly wrong.

It is next urged that the appellees were not entitled to recover, because no claim for the loss or damage sued for was made in writing and verified by an affidavit and delivered to the general freight agent of the appellant company within five days after the stock was removed from the car as was required should be done by the tenth clause of the contract of shipment. It was proven that one of the appellees, within less than the required five days, indited a letter to the claim agent of the appellant company in which he stated the fact of the injury to the cow and also that the extent of the injury or the amount of damages likely to result therefrom could not then be ascertained, etc. This letter was placed in an envelope which was addressed to the claim

agent and delivered within less than five days after the injury to Mr. Todd, who was the station agent of the appellant company at New Berlin, a station on the line of its road. In October following, the appellees again wrote to the appellant's claim agent and in this last letter, after reciting the facts of the injury to the cow, said: "We immediately notified you of the injury, advising you that as soon as the extent of damage could be ascertained, we would claim payment for the same."

This letter elicited an answer from appellant's freight claim agent to the effect that the claim had been referred to the legal department for an opinion as to liability upon the claim and that the appellees would be informed what action would be taken when the advice of the law officer of the road had been received, and that if necessary the writer would visit the appellee at New Berlin for the purpose of examining the cow, and if possible agreeing upon the amount of damage if the company was liable to pay damages.

The letter first written by Mr. Brown, was within five days after the removal of the stock from the car. It was not verified by an affidavit, and for that reason and perhaps others was not in full compliance with the agreement regarding notice.

The jury were warranted, however, in believing that the company received it without making objection or pointing out its defects, and afterward treated the claim as properly pending for adjustment upon its merits.

We think it was rightly held that the appellant company had waived further or other notice of the alleged loss. Knickerbocker Ins. Co. v. Gould, 80 Ill. 388.

It is next insisted that the provisions of the eleventh clause of the contract of shipment limits the liability of the appellant to $100 on account of loss or injury to any one animal, and that the recovery for a larger sum can not for that reason be upheld.

It is not contended that the shippers made any representation or statement as to the value of the animals and obtained a reduced rate on account of such stated value. The clause

in question of the shipping contract does not purport to fix $100, or any other sum as the agreed value of the animal. Can it be construed as an admission on the part of the shipper that the cow was worth no more than that? The clause is neither more nor less than an agreement that in no event shall the carrier be held liable for injury and damage to any one animal above the sum named. It is a contract for partial exemption from liability. If the liability arose, as we have seen it did from the gross negligence of the appellant company, the stipulation was ineffectual to relieve the company from liability, either partial or total.

A common carrier can not, in our opinion, shield itself by contract against any portion of the damages inflicted by gross negligence upon property in its care and being transported by it.

We are aware of the conflict of decisions on this point, but if there was ever doubt as to the rule in Illinois, it is now removed by the doctrine announced by our Supreme Court, in the case of Chicago & Northwestern Railway v. Chapman, 133 Ill. 96. Expressions made use of in the course of the opinion in the case cited are thought by counsel for the appellant company to justify the conclusion that where a carrier has two classifications under which live stock may be shipped, the one limiting the recovery to a stated sum on any one animal in case of loss or injury, and that in the other class there was no limitation, but a higher rate of freight was charged, the shipper, if he have notice of such classification, will be bound by the limitation as to the amount to be paid in case of loss, if he ships under that classification and at the reduced rate, and these expressions are relied upon as furnishing a governing rule for this case at bar. While it is said by the court that such classifications could in no way affect the shipper unless notice thereof had been brought home to him, it must not be understood as implied that he could be affected and precluded by such notice, for the court, proceeding in the course of the same opinion, says:

"But it (the classification) can not avail in any event as

against a right of recovery here. Plaintiff was guilty of no misconduct which would estop him from asserting his right to recover the value of his property, and it was unlawful for the railway company to contract for exemption from liability resulting from the gross negligence of its servants."

The objections urged against the instructions are disposed of by what has been said in the course of the opinion.

Finding no error in the record, the judgment must be and is affirmed.