## JENNINGS v. SMITH.

### (Circuit Court, N. D. Illinois, N. D. February 5, 1900.)

### No. 24,544.

CARRIERS—CONTRACT LIMITING LIABILITY.

    Notwithstanding Rev. St. Ill. 1889, c. 114, § 82, declaring it unlawful for a carrier, on receiving property for transportation, to limit its common-law liability for safe delivery by any stipulation of limitation in its receipt for the property, a contract signed by the shipper, providing that, in consideration of the lower rate of freight, his recovery, in case of damage, shall be limited to $100 for each horse shipped, is binding on him, he knowing of the provision, though the railroad clerk told him the clause "did not amount to anything," and was "only a matter of form," such statement not being within the line of the servant's duties, and the contract informing the shipper of the two rates, that the lower was in consideration of the limited liability, that the shipper could be bound only by written contract, and that a special contract could only be made by a general officer.

James C. McShane, for plaintiff.
Robert Dunlop, for defendant.

KOHLSAAT, District Judge. On the trial of this cause plaintiff sought to recover the value of four horses destroyed in an accident while in transit from Chicago to San Diego, Cal., over defendant's line of road. The evidence fairly establishes defendant's negligence. The action is brought upon the common-law liability of defendant as a public carrier. Defendant caused to be placed in evidence a certain contract of shipment from Chicago to Albuquerque, N. M., signed by plaintiff, and another contract from Albuquerque to destination, over defendant's line, signed by plaintiff's agent in charge of the horses. The contract signed by plaintiff, and also the one signed by plaintiff's agent, provided that, in consideration of the lower rate of freight given, plaintiff's recovery, in case of damage, should be limited to the stipulated sum of $100 for each horse. The court held at the trial, and so instructed the jury, that plaintiff was bound by the terms of the contracts, and could not recover in excess of the stipulated value of the horses, and a verdict was rendered accordingly. Plaintiff now moves for a new trial upon the ground that the court erred in so instructing the jury.

There is an apparent conflict between the rule followed by the courts of Illinois and that laid down by the United States supreme court, though a close examination greatly modifies the apparent variance. The statutes of Illinois declare that:

"Whenever any property is received by a common carrier, to be transported from one place to another, within or without this state, it shall not be lawful for such carrier to limit his common-law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property." Rev. St. 1889, c. 114, § 82.

The leading Illinois cases are Railway Co. v. Chapman, 133 Ill. 96, 24 N. E. 417, and Same v. Simon, 160 Ill. 648, 43 N. E. 596. Neither of these cases present the exact question at issue herein, and therefore it cannot be held to have been decided by them. The Chapman Case, in its facts, was quite similar to the case at bar, but it appears from the opinion in that case that at the time of shipment no notice was given of two classifications,—one limiting the amount of recovery for the horse to $100 in case of loss, and the other having no limitation as to value, but a higher rate being charged. The opinion goes on to state that a contract would be illegal which attempted to limit the common carrier's liability in the case of gross negligence or willful misfeasance. In the Simon Case there was a simple freight receipt, and not a signed contract, at issue. The statute only refers to a receipt, and from its terms does not contemplate a contract fairly entered into between the shipper and the railroad company, and signed by the shipper, wherein the shipper, in consideration of a reduction in the freight rate, agrees that the liability of the carrier in case of loss shall be limited to a stipulated value mentioned in the contract. The distinction between negligence and gross negligence is receiving less recognition than formerly by the courts, and in the federal courts the distinction is practically abrogated. The exact question presented herein does not appear to have been squarely presented to the Illinois supreme

court; but, in any event, as the question is one of general commercial law, any rule laid down in the premises by the federal supreme court would be binding on this court, even in the face of a contrary decision by the state court. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 443, 9 Sup. Ct. 469, 32 L. Ed. 788, and cases cited. In the case of Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, the United States supreme court held in unmistakable language that where a contract of shipment, signed by the shipper, is fairly made, wherein the valuation in case of loss is mutually agreed on in consideration of a lower rate of freight, the contract will be upheld. If the facts of the case at bar bring it within the rule laid down in the Hart Case, manifestly the former ruling of this court must obtain. There then remains only to determine whether the contract between the parties hereto was fairly entered into; and this question, on the condition of the evidence in this case, is clearly a question of law for the court. From plaintiff's testimony it appears that he had the previous year shipped over the same route a car containing horses, and had paid as the through rate the sum of $225. At the time of the first shipment he was called upon to sign a contract similar to the one at issue herein, and signed it, although, as he says, he "made a fuss about it." Prior to the time of the shipment in suit, plaintiff called upon the general freight agent at Chicago, and made arrangements with him for the transportation of a car to contain, among other things, the horses in question, from Chicago to San Diego, at the through rate of $220. Subsequently plaintiff had the car placed upon the tracks of the initial road, the Santa Fé, at its Chicago station, and commenced the loading thereof. He then went across the street, to the freight office, for the purpose of signing the contract of shipment. He testifies that he knew that he had to go to the station to sign a contract of shipment. When the contract was presented to him, he "kicked about signing it," because, as he stated, "his horses were worth more than $100." Thereupon the clerk of the company who had prepared the contract said to him that the limitation clause "did not cut any figure, and it was merely a matter of form." Plaintiff then signed the contract. At the top of this contract, in heavy type, were the following words: "Notice. This railway has two rates on live stock." Following which notice was the following paragraph:

"The rate given under this contract is lower than the rate made by the railroad company for the transportation of stock at the carrier's risk, and without limitation of liability, and is based upon the conditions and agreements found in this contract, and upon the valuation therein fixed. The shipper, by signing this contract, is deemed to accept the lower rate upon the terms and conditions specified as a part of this contract."

Then follows the statement that no station agent or station master has power to bind the company in regard to the shipment of live stock except by written contract, and that no one but a general officer of the company, and he only in writing, has power to make contracts with relation to certain methods of shipment. The third paragraph of the contract reads:

"Blooded animals, or those deemed especially valuable, will not be received for shipment and carried except on a special contract, which must be made between the owner or consignor and the general freight agent or general livestock agent of the company. Station agents will not be allowed to receive and ship such animals until such contract has been made."

Then follows the description of this particular shipment, and the clause limiting the valuation to $100 per horse. Section 7 of the contract signed at Albuquerque by plaintiff's agent in charge of the horses, with the defendant, reads as follows:

"It is understood and agreed that the stock shipped under this contract is transported at the above rates, upon the representation of the second party [plaintiff] that its value does not exceed $100 for each horse," etc.

Plaintiff actually read at least a portion of the contract, for he objected to the clause limiting the amount of recovery to $100 for each horse. As a matter of law, he is presumed to have read it all. Can it be said that the contract was not fairly entered into because of the statement of the railroad clerk that the limitation clause "did not amount to anything," and was "only a matter of form"? Plaintiff was advised by the contract that no agent could modify it. The most casual inspection would, and under the circumstances must, have informed plaintiff that the company had two rates on live stock, and that the low rate given was in consideration of the limited liability as to valuation. Certainly, unless plaintiff was fraudulently misled as to the contents of the instrument, or fraudulently procured to sign the same, the contract is binding upon him. As to the statement of the clerk, at best it can only be said that plaintiff took bad advice as to the legal effect of the contract. It would be unconscionable if great railroad systems should be bound by every expression of opinion of its servants as to the legal effect of a written instrument, unless such statement were shown to be clearly within the line of the servant's duties. There can be no such claim in this case. In the eye of the law this contract was fairly made, and is binding upon plaintiff in this case. The motion for a new trial is denied.