## INGRAM v. WEIR.

(Circuit Court, E. D. Pennsylvania. January 4, 1909.)

### No. 88.

1. CARRIERS (§ 153*)—EXPRESS RECEIPT—ACCEPTANCE.

Where an express receipt recited that the carrier agreed to carry the articles on the following terms and conditions, to which the shipper agreed, and as evidence thereof accepted the bill of lading, such acceptance constituted the shipper's assent to a clause that the carrier should not be liable for loss or damage to the goods, unless suit was commenced therefor within a year thereafter.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 687–690; Dec. Dig. § 153.*]

2. CARRIERS (§ 160*)—LOSS OR DAMAGE—ACTION—CONTRACT LIMITATION.

A provision of a bill of lading that the carrier should not be liable in any suit to recover for loss or damage to the property, unless suit was brought within one year, was reasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 231, 673; Dec. Dig. § 160.*]

3. CARRIERS (§ 160*)—STATUTES—LIMITED LIABILITY.

Act Ill. 1874 (Rev. St. 1874, c. 27) § 1, providing that it shall not be lawful for any common carrier to limit its common-law liability safely to deliver property at the place to which the same is to be transferred

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by any stipulation or limitation in the receipt given for such property, does not prevent a limitation of liability requiring suits to be brought within a specified time contained in a bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 231, 673; Dec. Dig. § 160.*]

At Law. Motion by defendant for judgment notwithstanding the verdict.

William T. Connor and John R. K. Scott, for plaintiff.

John L. Evans and Thomas De Witt Cuyler, for defendant.

J. B. McPHERSON, District Judge. On November 20, 1905, the plaintiff's wife, acting on his behalf, sent a box and a trunk by a hired wagon to the office of the Adams Express Company on Washington street in the city of Chicago. She followed the packages immediately to the office, but there is no evidence of what took place on that occasion. For some undisclosed reason the goods remained in the office of the company until November 27th, when she called again, inquired why they had not been forwarded, was told that the company was waiting for instructions, apparently gave such instructions, and then asked for and was given the receipt, or bill of lading, that was offered in evidence upon the trial. The packages were delivered in Philadelphia a day or two afterwards in such condition that the defendant's negligence could hardly be disputed—indeed, it was not denied at the trial—and as a somewhat belated result the present suit was brought in August, 1907, to recover damages for the loss sustained. By agreement of the parties a verdict for $616 was taken, subject to the reserved questions whether the plaintiff is entitled to recover at all, or, if entitled to recover some amount, whether the verdict should exceed $50, with interest. Both these questions depend upon provisions in the bill of lading; but, in the view I take of the matter, one question only need be considered.

As I have just stated, the present action was brought in August, 1907, nearly two years after the loss, and this delay is in violation of the following clause in the bill of lading:

"Nor shall the company be liable in any suit to recover for the loss, damage, or detention of said property unless the same shall be commenced within one year after such loss, damage, or detention shall have occurred, and not afterwards."

If this provision is binding, the suit is barred. The plaintiff argues that such effect should not be given to the clause for two reasons: First, he avers that the goods were received for carriage on November 20th, without the issue of any receipt or bill of lading, and denies the defendant's right to issue afterwards a bill of lading without a new consideration, and thus to limit the common-law liability that had already attached. The trouble about this position is that there is no evidence to support it. The trunk and box were hauled to the defendant's office, not by one of its own wagons, but by a local teamster in the city of Chicago, who was employed by the plaintiff for that purpose. Of course, packages thus deposited in the office of an express company

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

would not be shipped until definite instructions were given, and, if any instructions were given on November 20th concerning these packages, or if any contract was then entered into, the plaintiff failed to offer the necessary proof. Mrs. Ingram testified that she was at the defendant's office and saw the goods within an hour after she had given them to the teamster; but there is not a word of testimony about what further took place, if anything, on that day. As the plaintiff was bound to make out his case affirmatively, I am not at liberty to conjecture that a contract of carriage was then entered into, and to conjecture, further, what its terms may have been. But it does appear, and the fact is now controlling, that on November 27th, a written contract was entered into of which the terms are before the court. This contract, or receipt, or bill of lading—whatever name may be used to describe it—was offered in evidence by the plaintiff, and he did not prove or offer to prove that his agent had not read it, or did not know its contents, or did not understand it, or had not agreed to its terms, or had been induced to sign it by any fraud or under any misapprehension. Upon the facts stated, the acceptance of the receipt was equivalent to an express consent to its terms, and the plaintiff was as much bound thereby as if his agent had signed the paper. This is distinctly declared upon the face of the bill of lading itself, whereby the company agrees to carry the articles "upon the following terms and conditions, to which the shipper agrees, and as evidence thereof accepts this bill of lading." Indeed, his counsel concedes in the brief that was submitted upon this argument:

"That the acceptance of a shipping receipt, or like paper, at the time of, or before, the actual shipment of the goods, or delivery over to' the carrier, is enough in law to justify the presumption of assent on the part of the shipper to the limitation of liability, and will bar a recovery for more than the amount stipulated."

And that such acceptance justifies the presumption of assent to the limitation of time within which suit may be brought is no doubt also within the concession.

But, of course, while the acceptance of the bill of lading carries with it an assent in form to its terms, these terms must be reasonable, or the formal assent of the shipper goes for nothing. That the provision in question is reasonable seems to me to be undoubted upon principle, and to be amply supported by authority. Central Vermont Railway Co. v. Soper, 59 Fed. 879, 8 C. C. A. 341; Ginn v. Ogdensburg Transit Co., 85 Fed. 985, 29 C. C. A. 521; Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556. And see 6 Rose's Notes U. S. Rep. 420, and cases cited under Express Co. v. Caldwell. The legal rule is thus stated in 6 Cyc. 508:

"It is undoubtedly competent for the parties to a contract of shipment to agree on a limitation of time within which action for breach of the contract shall be brought, shorter than the statutory limitation, and such limitation will be enforced, if reasonable."

And in 5 Amer. & Eng. Enc. of Law (2d Ed.) 320, this language is used:

"But in the case of contracts with carriers a stipulation that a suit for a loss or injury to goods shipped under such contract must be brought within a fixed time, much shorter than the statutory period, is valid, and will be enforced when the limitation is not so strict as to be unreasonable."

The reason of the rule is given on page 321:

"The facilities of the carrier for tracing a loss and recovering the goods, or for finding out the true cause of the loss or injury, are of little use after the lapse of a considerable time, and its ability to defend itself or to recover the goods is greatly lessened where the shipper waits for some time before making his complaint; and for these reasons it is held that a carrier may properly contract with the shipper that he must present his claim within a fixed time or forfeit his right to insist upon it."

See, also, cases cited in notes to 6 Cyc. and 5 Amer. & Eng. Enc. of Law, and in note to 3 L. R. A. 344. A shorter limitation than one year has often been upheld as reasonable.

But it is further argued for the plaintiff that, even although the limitation might be binding in a contract made in some other state, it cannot be binding in an Illinois contract, such as is now before the court, because a statute of that state has forbidden a carrier to limit his common-law liability. The act in question was passed in 1874 (Rev. St. 1874, c. 27, § 1), and reads as follows:

"Whenever any property is received by a common carrier to be transported from one place to another within or without this state, it shall not be lawful for such carrier to limit its common-law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation in the receipt given for such property."

Assuming that the phrase "liability safely to deliver" includes liability to suit for failure thus to deliver, it will be observed that the act does not forbid every limitation, but only the particular limitation that may appear "in the receipt given for such property." This prohibition apparently leaves untouched the right of the carrier to limit his liability by a contract with the shipper; and the decisions of the Supreme Court of Illinois, in construing this statute, bear out this supposition. In Railway v. Chapman, 133 Ill. 96, 24 N. E. 417, 8 L. R. A. 508, 23 Am. St. Rep. 587, the court, after quoting the act, declared that it did not "in terms prohibit common carriers from limiting their common-law liabilities by contract with the owner of property delivered for transportation," and then went on to say:

"Formerly the restriction of a carrier's liability, when expressed in a mere receipt, often gave rise to the question as to whether the shipper had knowingly assented thereto, and this enactment was doubtless intended to obviate the difficulty growing out of that condition. In many respects a railway carrier may by express contract limit its strict common-law liability. It may by a special contract limit the liability to such damage or loss as may occur on its own line of carriage. The carrier may limit its liability against loss by fire without its fault," etc.

So, also, in Railway v. Simon, 160 Ill. 648, 43 N. E. 596, the court declared again that by the act "the right to limit a common-law duty in a receipt was prohibited," but immediately added:

"It has, however, been recognized by frequent decisions of this and other courts that a common-law duty may be limited by express contract."

It will thus be seen that the receipt or bill of lading in question is a contract to which the Illinois statute does not apply, and that the clause concerning the limitation of the time within which suit must be brought is a reasonable provision, and therefore binding upon the shipper. It follows that, as the pending action was not brought until nearly two years had expired after the loss, the plaintiff is barred from recovering any amount.

Judgment is directed to be entered in favor of the defendant notwithstanding the verdict. To this order of the court an exception is sealed in favor of the plaintiff.