ULLMAN, Respondent, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

*October 19 — November 29, 1901.*

*Carriers: Limiting liability: Negligence: Bill of lading: Valuation:
"Accident:" Construction of contracts.*

1. A common carrier may, by contract made with a shipper on a value
basis of the subject of carriage, limit the liability for loss thereof
or damage thereto, attributable to such carrier's negligence, to act-
ual loss upon such basis; and the agreed value may be the maxi-
mum or actual value of the property.

2. If a bill of lading issued by a common carrier states the value of the
property received for shipment, or the maximum value thereof,
either as declared by the shipper or without specifying the same
to be so declared, and the latter, without objecting to such stated
value, delivers his property to the carrier and receives the bill, he
thereby assents to the terms thereof as regards such value.

3. A common carrier may, in consideration of a special freight rate or
other valuable consideration, secure entire exemption from lia-
bility as an insurer for loss of or damage to property, received from
a shipper for transportation, not caused by negligence or wilful
misfeasance.

4. A contract between a common carrier and shipper, exempting the
former from liability for loss of or damage to property received
for transportation caused by negligence, is void because contrary
to public policy; but that rule does not militate against the valid-
ity of an agreement, fairly made, liquidating such loss or damage
in advance upon an actual or maximum value basis agreed upon
and stated in the contract.

5. A contract between a common carrier and shipper, limiting the lia-
bility of the former for loss of or damage to the subject of carriage
to an arbitrary sum of money not fixed with reference to the
agreed actual or maximum value of the property, is an unlawful
limitation of liability.

6. The meaning of the word "accident" includes the result of human
fault held to be actionable negligence. It is not used, ordinarily,
as synonymous with "mere accident" or "purely accidental" or
any similar term, but as the opposite thereof.

7. The words "in case of accident" being used in a bill of lading,
referring to events involving damage to the subject of carriage for
which the carrier would be liable, and later in the contract the

words "negligence aforesaid" being used in regard to the produc-
ing cause of injuries to the subject of carriage, without any pre-
cedent language other than the words "in case of accident" to
which such words can reasonably refer, leaving such latter expres-
sion without significance except by reference to the former ex-
pression, such latter expression should be taken as pointing to the
former, under the rule for judicial construction that every word
or expression in a contract should be given some significance if
that can reasonably be done.

8. The rule for judicial construction that where the meaning of lan-
guage in a contract is doubtful, and either of two meanings is
within the reasonable scope thereof, the one should be taken for
the meaning intended by the parties which is in harmony, rather
than the one which is out of harmony, with common-law rights,
cannot properly be invoked for the purpose of determining the
contractual intention of the parties, merely because a particular,
significant word used by them, as an abstract proposition, may
have either of two meanings.

9. Before the rule for choosing between two meanings of a word or ex-
pression can properly be applied in construing a contract, it must
be determined that the meaning intended by the parties is obscure,
viewing such word or expression in the light of the whole contract
and from the standpoint of the parties when it was made.

10. Appropriate language being used in a bill of lading, liquidating, on
a value basis, recoverable damages for the loss of or injury to the
subject of carriage happening through events described by such
language as to reasonably include results of negligence on the part
of the carrier, and also appropriate language exempting the carrier
from all liability, in consideration of a special freight rate or other
valuable consideration, for loss of or damage to such subject by
events not necessarily attributable to the carrier's negligence, the
reasonable and sensible construction of the whole is that the lim-
itation of liability upon a value basis refers to loss by negligence,
that being the customary way of liquidating damages in advance,
caused by fault of that nature, and that the entire exemption from
liability refers to damages caused by such mere accidents as the
carrier would be liable for, and that neither refers to occurrences
for which there would be no liability whatever, nor to damages
caused by wilful misfeasance.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Oconto
county: S. D. HASTINGS, JR., Circuit Judge. *Modified and
affirmed.*

Action to recover the value of a horse shipped by plaintiff over defendant's road and so badly injured in the transportation as to render it useless and of no value to plaintiff. The jury found all the issues in plaintiff's favor and assessed the value of the horse at $225, for which sum, with interest, his counsel moved for judgment. The motion was granted, defendant's counsel excepting to the ruling upon the ground, among others, that if plaintiff was entitled to recover at all such right was limited to $100 and interest under the terms of the shipping contract, which was as follows:

"CHICAGO & NORTHWESTERN RAILWAY COMPANY.

"LIVE STOCK CONTRACT.

"Liability limited to the declared valuation of shippers, but not exceeding the following:

| | |
|---|---|
| Each horse or pony (gelding, mare, stallion), mule or jack | $100 |
| Each ox or bull | 50 |
| Each cow | 30 |
| Each calf | 10 |
| Each hog | 10 |
| Each sheep or goat | 3 |

"Agents are not permitted to receive or ship animals of a higher value than as stated above, unless by special agreement noted hereon, and a proper contract or release is signed by the owner or shipper thereof; and it is agreed between the owner and shipper of these animals, and the said railway company, that in case of accident resulting in injury to said animals, the value thereof shall in no case exceed the values named above.

"Shipments of live stock in carloads or less than carloads will only be taken at the rates named herein, after this contract or agreement shall have been signed by the company's station agent and the owner or shipper, by which it is agreed and understood that such owner or shipper shall load, feed, water and take care of such stock at his own expense and risk, and will assume all risk of injury or damage that the animals may do themselves, or each other, or which may arise by the delay of trains.

"Different kinds of live stock must not be loaded together in the same car, except as provided for in classification or

by special instructions.   Agents are not authorized to agree to forward live stock to be delivered by any specified time.

" For rules in regard to passing men in charge of live stock and return passes, see circulars issued from general freight department.   Women not to be passed in charge of live stock.   All persons in charge of live stock will be passed on trains with and to take care of the stock, and will be expected to ride in the caboose attached to the train.   Persons in charge of live stock are prohibited from getting on or off cars or walking over them while they are in motion.

" Agents will permit only the signatures of owners or *bona fide* employees who accompany the stock, to be entered on the back of the contract, without regard to passes allowed by the number of cars, and run a pen through the remaining lines.   Such entry of persons in charge of and certificate of billing agent to that effect, with proper notation on the way bill, will be the authority for conductors to pass them with the stock.   All persons are thus passed only at their own risk of personal injury from whatever cause.

"H. R. McCullough,
"General Freight Agent."

"No. of waybill.                                        Nos. of cars.
740                                                    735.
" *Freight Office Chicago & Northwestern Railway Co. U.S. Yards Station, 11–14, 1895, hour.* . . .

" Received of *Jacob Ullman* one car horses to be delivered to *Jacob Ullman*, Oconto station, at the following rates — tff.

" In consideration of which, and further valuable considerations, it is hereby mutually agreed that said company shall not be liable for loss of live stock by jumping from cars, delay of trains not caused by negligence as aforesaid, or any damage said property may sustain except such as may result from a collision of the train with other trains, or when the cars are thrown from the track in course of transportation; and in this case the company upon whose road the accident, loss or damage shall occur shall be liable therefor, and no suit shall be brought or claim made against any other company forming a part of the route, for such loss or damage — (it being expressly understood and agreed that the responsibility of this railway company shall cease upon delivery of said property to its connecting line, unless otherwise agreed

to in writing and signed by the respective parties hereto), and that the rules and regulations printed above are an essential part of this contract.

"CHICAGO & NORTHWESTERN RY. Co.,
    "By J. Hewitt, Jr., Agent.
"JACOB ULLMAN, Owner,
    "By Oscar Scott."

Defendant appealed.

*Edward M. Hyzer,* for the appellant. The trial court seems to have confounded the word "accident" with the• terms "mere accident," "inevitable accident," "unavoidable accident," "pure accident." These qualified terms are used by law-writers to distinguish between responsible human conduct and irresponsible agency, while the word "accident" is used as indicating an unfortunate and undesigned event. Such is the ordinary and common acceptation of the word, and this meaning must be given to it in the contract under consideration. 1 Shearm. & Redf. Neg. §§ 16, 18; 1 Thomp. Neg. § 14; *Hyer v. Janesville,* 101 Wis. 371; *Koenig v. Arcadia,* 75 Wis. 62, 68; *Oliver v. La Valle,* 36 Wis. 592; *Cummings v. Nat. F. Co.* 60 Wis. 603, 611; *Annas v. M. & N. R. Co.* 67 Wis. 46, 59; *Schneider v. Provident L. Ins. Co.* 24 Wis. 28; *Freeman v. Travelers' Ins. Co.* 144 Mass. 572; *Supreme Council v. Garrigus,* 104 Ind. 133; *Bostwick v. Stiles,* 35 Conn. 195; *Morris v. Platt,* 32 Conn. 75. See, also, *Theobald v. Railway P. A. Co.* 26 Eng. L. & Eq. 432; Johnson's Dict.; Century Dict.; Webster's Dict.; Standard Dict.

*D. G. Classon,* for the respondent, contended, *inter alia,* that since the railroad company is attempting to limit its common-law liability by a contract, the court will not extend by implication any of the words used. If the word "accident" has a legitimate meaning which will avoid such limitation, it is the duty of the court to give it such meaning. *N. K. Fairbank & Co. v. C., N. O. & F. P. R. Co.* 38 L. R. A. 271; *Black v. Goodrich Transp. Co.* 55 Wis. 319; *Cream City R. Co. v. C., M. & St. P. R. Co.* 63 Wis. 93. It seems very plain that the word "accident" and the expression "not

caused by negligence " are intended to be used in the con-
tract as equivalents of each other. There is nothing in the
contract to which the words " not caused by negligence as
aforesaid " can refer except to the word " accident " which
precedes it. Conceding, for the sake of argument, that an ac-
cident may sometimes be the result of negligence, yet in this
case the word is not used as a *result*, but as one of the *causes*
which result in injury. *Accident* resulting in injury is dis-
tinguished from other causes, as *negligence*, resulting in in-
jury. Ray, Negligence (Pass. Carriers), § 22; *Carroll v. S.
I. R. Co.* 58 N. Y. 126; *Gault v. Humes*, 20 Md. 299; *Hodg-
son v. Dexter*, 1 Cranch, C. C. 109; 1 Story, Eq. Jur. § 78;
*Blythe v. D. & R. G. R. Co.* 11 L. R. A. 615; *Morris v. Platt*,
32 Conn. 85; *Kopper v. Dyer*, 59 Vt. 477.

MARSHALL, J. The learned trial court correctly decided
that if appellant and respondent, when their contract was
made, as a part thereof fairly agreed upon the value of the
horse as a basis for the charges for transporting it and re-
sponsibility for its safety in respect to dangers from negli-
gence on the part of the carrier, such agreement was valid
and limited the right of respondent to the recovery of $100
and interest. That is the settled law, notwithstanding in a
few jurisdictions such doctrine is not recognized; and it ap-
plies where the maximum, as well as where the actual, value
is agreed upon. The leading case on the subject is *Hart v.
Pa. R. Co.* 112 U. S. 331. The principles there declared have
been adopted in most of the states of the Union, including
this state (*Loeser v. C., M. & St. P. R. Co.* 94 Wis. 571;
*Schaller v. C. & N. W. R. Co.* 97 Wis. 31), and are not in con-
flict with anything said or decided in *Abrams v. M., L. S. &
W. R. Co.* 87 Wis. 485. There is a wide difference between
an agreement exempting a carrier from the liability which
the common law imposes, and one fixing a value basis for
charges for transportation of and responsibility for property

intrusted to its care. The former is universally condemned; the latter, when fairly made, is, as a general rule, upheld. The limitation indicated, upon the power of parties to contract, rests on grounds of public policy which cannot reasonably be said to require any restraint upon the right to fairly gauge charges for services and risk by a property value basis.

But it is said there was no agreement between the parties to the transaction in this case as to the value of the horse as a basis for the contract of carriage. The trial court so decided, holding the contract in question to be the same, in all essential particulars, as a stipulation against any liability for loss of the subject of carriage or damage thereto through negligence of the carrier, or liability for any such loss in excess of a stipulated amount having no regard to the value of the property; and further, as we understand it, that an agreement upon the maximum value is not a compliance with the condition of the right to vary common-law responsibility. A careful reading of the opinion in *Abrams v. M., L. S. & W. R. Co.* will show that the decision turned on the general doctrine that a common carrier cannot make a valid contract avoiding altogether the common-law liability for the result of his negligence, or arbitrarily limiting his liability in case of loss by negligence. There was nothing in the contract there considered indicating that the limitation of liability agreed upon was made with reference to the value of the property. There was simply an arbitrary stipulation against liability in excess of a certain sum named. We are unable to agree with the trial court that the stipulation in the contract before us was of that character, or that it does not contain an agreement as to the value of the horse for the purposes of its transportation. The statement therein of the declared value of the horse, by the shipper, being $100, the delivery and acceptance of the property for shipment pursuant thereto, and the acceptance by the shipper of the bill of lading, clearly amounted to an

agreement between the parties that the value of the prop-
erty was as indicated.  *Hart v. Pa. R. Co.* 112 U. S. 331.

The learned trial court said, in his opinion, that the con-
tract did not name the value of the property or contain any
agreement on that subject, but was a simple declaration
limiting liability.  Since the contract named $100 as the
value of the horse, and so referred thereto as to clearly in-
dicate an intention to thus place a maximum value upon the
property, we are led to believe, as before indicated, that it
was supposed by the court that, owing to the failure to
specify a certain instead of a maximum value, there was no
agreement as to value within the doctrine permitting com-
mon carriers to limit their liability by charging for their
service on the basis of an agreed value of the subject of
carriage, and that in the *Abrams Case* it was so decided.
We do not so understand that case.

There are three well-recognized classes of cases in the
books on the subject under consideration: First, those where
the parties agreed upon the value and limited the liability
of the carrier accordingly.  *Coupland v. Housatonic R. Co.*
61 Conn. 531; *Brehme v. Dinsmore,* 25 Md. 328; *Graves v.
L. S. & M. S. R. Co.* 137 Mass. 33; *Hill v. B., H. T. & W.
R. Co.* 144 Mass. 284; *Zimmer v. N. Y. C. & H. R. R. Co.*
137 N. Y. 460.  Second, those where the stipulation fixed a
maximum value of the property and it was agreed that in
case of loss the recovery should not exceed such value.  The
great majority of cases belong to this class and in the main
refer to *Hart v. Pa. R. Co., supra,* which was such a case.
The following are of the same character: *Alair v. N. P. R.
Co.* 53 Minn. 160; *J. J. Douglas Co. v. Minn. T. R. Co.* 62
Minn. 288; *Belger v. Dinsmore,* 51 N. Y. 166; *Muser v. Hol-
land,* 17 Blatchf. 412; *Railway Co. v. Sowell,* 90 Tenn. 17;
*Starnes v. Railroad Co.* 91 Tenn. 516; *South & N. A. R. Co.
v. Henlein,* 52 Ala. 606; *Durgin v. Am. Exp. Co.* 66 N. H.
277; *Richmond & D. R. Co. v. Payne,* 86 Va. 481; *Ballou*

*v. Earle*, 17 R. I. 441. Third, cases where the contract either exempted the carrier altogether from liability for the result of negligence, or such liability was limited to a certain sum arbitrarily fixed, that is, having no reference to the actual value of the property. *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, belongs to this class, and it is so placed in the note to the text on the subject in 4 Elliott, R. R. § 1510.

Most of the conflicts that are supposed to exist in the decisions are confined to this third class of cases. It has often been a question whether an amount stated as the limit of the carrier's liability was inserted in the contract merely for the purpose of such limitation, or for the purpose of measuring the responsibility by the actual value of the property. That question has been a subject for consideration where the word "value" was used in connection with the limit placed upon recoverable loss, as well as where neither that word nor anything equivalent thereto was used, as in the *Abrams Case*. For examples we cite the following: In *Harvey v. T. H. & I. R. Co.* 74 Mo. 538, the property carried was a horse. This language was used in the bill of lading: "Value if injured or killed, $100." The contract was sustained because the court, viewing it from the standpoint of the parties at the time it was made, held that it contained an agreement that the value of the horse was the sum named, and indicated that the contract of carriage was made fairly upon that basis. In *Louisville & N. R. Co. v. Owen*, 93 Ky. 201, the stipulation in the bill of lading issued to the shipper of a horse was to the effect that the liability of the carrier, in case of any injury to the horse, should not exceed $100, nothing being expressly said about its value. The court held that the limitation was a mere stipulation against liability for negligence and was void. Similar stipulations were upheld upon the ground that they were named with reference to the value of the property at the time and

place of shipment in the following, among a large number of cases that might be cited: *Zouch v. C. & O. R. Co.* 26 W. Va. 524; *Western R. Co. v. Harwell,* 91 Ala. 340; *Squire v. N. Y. C. R. Co.* 98 Mass. 239.

It will be noted that all the cases cited are in perfect harmony with *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, since the court there determined that the limitation of liability was fixed arbitrarily. In *Moulton v. St. P., M. & M. R. Co.* 31 Minn. 85, the contract was in all essential particulars the same as the one in the *Abrams Case,* and the result was the same. The key to the decision in that and all similar cases — except those in a few states which do not permit contracts limiting, directly or indirectly, the common-law liability of common carriers for negligence, and are out of harmony with the decision of the supreme court of the United States in *Hart v. Pa. R. Co.* 112 U. S. 331, of which *Chicago & N. W. R. Co. v. Chapman,* 133 Ill. 96, where substantially the same form of contract we have before us was considered, is a fair example — is contained in the following language: "Upon the face of the contract under consideration it is apparent that it was not the purpose of the parties to liquidate the damages recoverable with reference to the value of the property consigned to the carrier." In a later case which has been cited (*Alair v. N. P. R. Co.* 53 Minn. 160) the form of contract was substantially the same as the one before us, and it was said that the decision in *Moulton v. St. P., M. & M. R. Co.* 31 Minn. 85, had no bearing thereon except as it recognized the right of a common carrier and shipper to limit the liability of the former for damages through its negligence by a fair contract upon the basis of the value of the property; and it was held that, in the contract there under consideration, unlike the one in the *Moulton Case,* the damages, in case of loss or injury to the property, were liquidated with reference to the value thereof as declared by the shipper or assented to by him, as in *Hart v. Pa. R. Co.* 112 U. S. 331.

Enough has been said to demonstrate that we would be flying in the face of the decisions of this and most courts were we to hold that the contract in question is a mere arbitrary stipulation against liability for negligence; and at the same time we would be violating the plain words of the contract. The opening words of the bill of lading were, in substance, that the value of the horse did not exceed $100. To that reference was thereafter made in the paper as a valuation of the property, and in one instance as a valuation agreed upon between the owner and shipper. In view of that, how can it be said that the limit of liability was arbitrarily fixed, no reference being had to the actual value of the property as in the *Abrams Case?* It might be so said if, while language was used ostensibly fixing the value of the property, such value was so out of harmony with the ordinary value of similar property as to indicate that value, in fact, did not enter into the transaction. But that is not the situation here. As said by the court in *Alair v. N. P. R. Co.* 53 Minn. 160, apt language was used to make an agreement as to the value of the property, and the amount named is in harmony with common knowledge as to the value, ordinarily, of horses. So it would be doing violence to words to hold that the parties did not intend to do what their language indicates was their purpose. The contract seems to satisfy all the essentials of a valid agreement between shipper and common carrier, liquidating the maximum amount of damages recoverable by the former of the latter in case of loss or injury to the subject of carriage. The amount was fairly agreed upon, it was reasonable, and the charges for services and responsibility were based thereon. Such a contract has no similarity to the one construed in *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485; *Moulton v. St. P., M. & M. R. Co.* 31 Minn. 85, and similar cases.

We have left to consider the question of whether the word

of limitation used in the contract, in regard to the class of injuries the *parties had in mind in restricting* recoverable damages, included injuries attributable to the carrier's negligence. The trial court decided in favor of respondent on that proposition. It will be noted that, following the language of the contract containing the shipper's declaration of the value of the horse, and in close connection therewith, are these words: "And it is agreed between the owner and shipper of these animals, and the said railway company, that in case of *accident* resulting in injury to said animals, the value thereof shall in no case exceed the values named above." In no place before those words occur or thereafter is the word "negligence" used, or any word in itself indicating the precise meaning the parties ascribed to the word "accident" till we reach the conclusion of that part of the contract containing the carrier's receipt for the horse and statement of the rate for service to be rendered in respect to the property, when the following words occur: "In consideration of which, and further valuable considerations, it is hereby mutually agreed that said company shall not be liable for loss of live stock by jumping from cars, delay of trains not caused by *negligence as aforesaid*, or any damage said property may sustain except such as may result from a collision of the train with other trains, or when the cars are thrown from the track in course of transportation," etc. Now we have nothing to do with the last part of the language quoted, so far as it purports to exempt appellant altogether from injury or loss of the property while in its charge, from its negligence. We look in vain through what preceded the word "negligence" for anything that can reasonably be said to be the antecedent thereof other than the term "accident." By a very familiar rule for the construction of contracts, every word in the agreement must be taken to have been used for a purpose, and no word be rejected as mere surplusage if we can discover any reasonable purpose

thereof which can be gathered from the whole instrument. The words " negligence aforesaid " are strikingly significant. They must necessarily be taken to refer to some word or words that precede them, and it seems that, if they do not point to the word " accident " as their antecedent, they have none.

The learned circuit court reasoned thus: The carrier's common-law liability cannot be varied except by language unmistakably indicating that such was the intention of the parties; the contract is open to two constructions, hence it is the duty of the court to adopt the one most favorable to the shipper.  We find no fault with those rules for construction, but the premises assumed in applying them to the case seem to be incorrect.  Judicial construction of a contract does not reach a point where the meaning of some significant word can be said to be in doubt and it is permissible to assign thereto one of two meanings, either of which is within the reasonable scope thereof, upon merely arriving at a conclusion that such word may, as an abstract proposition, be given either of two meanings.  A word in a contract, taken by itself, often admits of two meanings, when, from the whole contract to be construed, there is no reasonable doubt as to the sense in which the parties used it.  In that situation, the particular sense they ascribed to the word when the contract was made must be adopted if it is within the reasonable scope thereof.  That satisfies the requisites of clearness in such a contract as the one before us, in order to vary the common-law liability of the carrier, and precludes the application of the rule that in case of doubt the uncertainty should be resolved against the carrier or the person responsible for the use of the uncertain term in the contract in respect to his own interests.  If mere ambiguity of expression were always taken as justifying a court in choosing between two meanings of a particular word or collection of words, either of which is within the reasonable scope thereof,

the primary purpose of judicial construction — that of de-
termining the intention of the parties in regard to the sub-
ject for construction, so far as the same can be located
within the reasonable meaning of the language they chose
to use — would often fail of accomplishment. There is often
ambiguity of expression in a written contract or other writ-
ing when the meaning is plain, leaving no room for a selec-
tion to be made between two meanings for the purpose of
arriving at the intention of the parties thereto. Words in
their literal sense, if so applied, may lead to such an absurd
result as to obscure the real meaning; and again, words in
a contract, when taken in their literal sense, may be obscure
in meaning and such obscurity entirely disappear when a
view is taken from the standpoint of the parties in reducing
their agreement to writing. As an abstract proposition, it
may be admitted that the meaning of the word "accident"
is not always the same. However, if the reasonable scope
thereof will admit of its standing as the antecedent of "neg-
ligence" in the contract before us, the meaning the parties
to the writing ascribed to it is too plain to be disregarded.

The trial court seems to have supposed that the word "ac-
cident" does not, properly speaking, or as commonly under-
stood, refer to the result of negligence. In that he was
clearly wrong. True, the word, in the narrow sense usually
given thereto in connection with some qualifying word, does
not refer to the result of actionable negligence, but it is
commonly used without any qualifying word in speaking
of such a result. There are, in this and other courts, many
examples of such use. The numerous instances referred to
by appellant's counsel might be largely added to. *Oliver v.
La Valle,* 36 Wis. 592; *Cummings v. Nat. F. Co.* 60 Wis.
603, 611; *Annas v. M. & N. R. Co.* 67 Wis. 46, 59; *Koenig
v. Arcadia,* 75 Wis. 62; *Groesbeck v. C., M. & St. P. R. Co.*
93 Wis. 508, 509; *Hyer v. Janesville,* 101 Wis. 371; *Buck-
master v. C. & N. W. R. Co.* 108 Wis. 353. In the last case

cited this language was used: "If the accident be one which could happen only through decedent's negligence, then, of course, the accident itself establishes such negligence." In *Groesbeck v. C., M. & St. P. R. Co.* this language was used, speaking of the opinion of the court in a previous case: "The accident in that case occurred at a place where there was no restriction on the speed of trains."

Further examples to almost any extent could be given showing that the result of negligence is commonly spoken of as an accidental occurrence, the term "mere accident" being commonly used where it is desired to repel the idea of negligence. In *Sawyer v. H. & St. J. R. Co.* 37 Mo. 240, 262, an instruction to a jury was held strictly accurate where the court spoke of "mere accident" as not actionable, putting the decision on the ground that the word "mere" differentiated a nonactionable from an actionable occurrence, the former being referred, for the proximate cause, to mere chance, and the latter to want of legal care on the part of a responsible person. In *Henry v. Grand Ave. R. Co.* 113 Mo. 525, the jury were instructed that if the injury to the plaintiff was purely accidental, he could not recover. It was contended on the part of the plaintiff that such language was misleading because in the law of negligence the word "negligence" and the word "accident" are used synonymously. The court coincided with that view, yet held that the instruction was proper because of the qualifying word "purely;" that without such qualification "accident," referring to an occurrence caused by human agency, might suggest precedent negligence; and that the use of such qualifying word with the word "accident" is well understood to exclude negligence or carelessness. In *McCarty v. N. Y. & E. R. Co.* 30 Pa. St. 247, the term "accident" was held applicable to an occurrence resulting from negligence, but that the use thereof, in speaking of an event causing damage to a person for which no one was liable,

was proper because of the following explanatory clause, "a circumstance over which they could have no control."

Thus it will be seen that while the term "accident," when ascribed to an injury to person or property rights, in a narrow sense, not only excludes human intention or expectation, but likewise duty, under the circumstances, in the exercise of ordinary care, to have anticipated the danger and guarded against it, yet it is treated in all the books as a proper designation of occurrences arising from actionable negligence. So common has its use in that way become that law writers have felt warranted in adopting, for a title to a treatise on law and practice in cases grounded on negligence, the words, "Law and Practice in Accident Cases." See Black's work on the subject. In *Nave v. Flack*, 90 Ind. 205, in discussing this subject, the court said: "The poverty of language compels the use of words in different meanings, and this is notably true of the word 'accident.' Strictly speaking, an accident is an occurrence to which human fault does not contribute; but this is a restricted meaning, for accidents are recognized as occurrences arising from the carelessness of men." In Browne, Judicial Interpretation, 4, 5, it is said that it will not do to construe the word "accident" as necessarily excluding negligence, for otherwise there could never be an accident where any one is careless; and to that the author cites *Schneider v. Provident L. Ins. Co.* 24 Wis. 28, where this court held that 'there is nothing in the definition of the word "accident" which excludes negligence; that an accident may happen from an unknown cause, but it is not essential that the cause should be unknown; it may be an unusual result of a known cause and therefore unexpected to the party; that accidents often happen from such kinds of negligence.'

It does not seem necessary to pursue this subject further to show that the trial court most grievously erred in holding that the terms "accident" and "mere accident" are

synonymous and both exclude human fault called "negligence." On the contrary they are well-nigh universally treated in legal opinions as opposites, the former being referable, among other causes, to responsible human agency. It will not do to rely absolutely, for the meaning that may be reasonably ascribed to words, upon definitions thereof found in standard dictionaries. The use of words always precedes their recorded signification. When a particular use of a word becomes common, that use must be taken into consideration in construing a contract containing such word, regardless of whether the meaning can be found in any lexicon or not.

It follows from what has been said that "accident," as used in the bill of lading under consideration with reference to the occurrence for which liability of the carrier was limited to the stated value of the horse, may be said to include the result of negligence, and that the words " caused by negligence as aforesaid," in describing occurrences for which the appellant intended to recognize by express contract its liability, referred to the precedent words "in case of accident," and that such reference is so clear as to leave no room for the application of the rule which guided the trial court, that in case of doubt between two meanings of a word, either of which is within the reasonable scope thereof, the one should be adopted which sustains rather than the one which limits common-law rights.

There is another and perhaps still stronger reason than the one we have given for holding that the parties to the contract under consideration used the word "accident" in its broad sense. There were at least four ways in which the property of respondent was liable to be injured while in the possession of appellant, three of which, in the absence of a special contract, were included in the carrier's ordinary or extraordinary liability, which extended to the entire loss that might accrue to the shipper: (1) Acts of

God or the public enemies; (2) wilful misconduct of the carrier; (3) negligence of the carrier; (4) occurrences not referable to either of the causes mentioned, and which would be *damnum absque injuria* except for the special responsibility of common carriers as insurers. For injuries caused in the way first mentioned the law exempted appellant from all responsibility. For injuries caused in the second way, it was doubtful, at least, whether appellant could secure exemption by contract. *Chicago & N. W.R. Co. v. Chapman*, 133 Ill. 96. For injuries caused in the third way it was within the power of appellant, by a fair agreement, to fix the measure of its liability on a value basis of the property. For injuries caused in the fourth way, appellant was free to obtain entire exemption of liability by contract, supporting the release of liability merely by a special freight rate. *Schaller v. C. & N. W. R. Co.* 97 Wis. 31. It follows that if we were to hold that the word "accident," as used in the contract before us, means "mere accident"— occurrences falling within either the first or fourth way mentioned — we would convict the appellant of doing the absurd thing of stipulating for a limitation of responsibility where none existed at all, or for a limitation of liability to $100 where entire exemption from liability could be, and in fact was, secured in consideration of a special freight rate, as indicated by language in the contract exempting appellant from all liability in certain cases in consideration of the tariff rate mentioned. The contract can only be made to appear reasonable and sensible, as it seems, by holding that the parties intended to confine the entire exemption from liability to those occurrences that were proper subjects for a contract to that effect, and to limit the liability, in the event of loss or injury to the property by negligence, in the only way protection in that regard could be secured, that is, by a fair contract on a value basis of the property. That the parties had in mind the class of liabilities which are

universally guarded against, so far as the law will permit it, by such a contract, seems clear. In this connection it is significant that in *Chicago & N. W. R. Co. v. Chapman, supra,* the form of contract contained the word "accident" as a designation of the occurrences which the clause limiting liability referred to, the same, substantially, as in this case; and it was treated without contention as including occurrences attributable to the carrier's negligence and as binding to that extent; but the plaintiff was held entitled to recover because the loss was caused by wilful misfeasance of the carrier.

For the reasons given the judgment appealed from must be modified by reducing it to $100, with legal interest from November 22, 1895, and costs as heretofore taxed, and affirmed as modified, costs in this court to go in favor of the appellant.

*By the Court.*— So ordered.

