FELDSCHNEIDER, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*May 13—September 27, 1904.*

Railroads: Negligence: Injury to passenger: Parting of train: Presumptions: Court and jury: Rules of company: Instructions to jury: Proximate cause: Limiting carrier's liability.

1. The fact that a railway train, after having broken in two, ran several miles in that condition, raises a presumption of negligence.

2. A long train ran three miles or more after having broken in two, and then, by a collision between the parts, plaintiff, a passenger, was injured. The trainmen, who knew that such breaks were liable to occur and that they must be on the lookout for them, had performed all the duties required of them by the rules of the company, but had made no effort to ascertain the condition of the train except to look from the ends of the train, knowing at the time that mere looking would not disclose such a break as in fact existed. *Held,* that it was a question for the jury whether they were negligent.

3. A traveler upon a railway train is entitled to have reasonable precautions taken for his safety, and such precautions are not necessarily measured by the rules of the railway company.

4. A definition of proximate cause, in the charge to the jury, as "the efficient cause, that which produces the injuries complained of, and which, in the light of the attending circumstances ought reasonably to have been foreseen by persons of ordinary intelligence and prudence," could not reasonably

have been understood to mean that the *cause* ought to have been foreseen, instead of the *effect;* and the faulty grammatical construction was therefore not prejudicial.

5. The omission from such definition 'of words characterizing the injuries as a "natural and probable result" of the cause, was not a prejudicial error, that idea being necessarily implied; but such omission is not approved.

6. One nominally traveling on a railway train without payment of fare is a passenger for hire where the agreement for his carriage is part of the mutual agreement for the carriage of his live-stock for hire on said train.

7. A stipulation in the contract of carriage, limiting to an arbitrary sum the liability of a railway company for injuries to a passenger for hire, is void.

APPEAL from a judgment of the circuit court for Jefferson county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

The plaintiff was injured on the night of May 6, 1902, while riding upon one of the defendant's freight trains, and brings this action to recover damages for such injuries.

The evidence upon the trial showed that the plaintiff was the owner and in charge of a car of live-stock which was being transported from Watertown, Wisconsin, to Chicago, under a written contract which gave him the right to travel upon said train; that the train left Watertown on the evening of May 6th, and proceeded without stop until it reached a point where the caboose of the train was about three quarters of a mile west of Brookfield Junction, where the accident occurred; that the train consisted of forty-seven freight cars, an empty passenger coach, and a caboose, the caboose being at the rear and the coach immediately in front of it; that the train was manned by a crew consisting of the conductor, head brakeman, and rear brakeman, also the engineer and fireman on the engine; that at Duplainville the defendant's road crosses the Wisconsin Central Railway at grade, there being no station or town at this point, but simply a tower at the intersection of the two tracks, occupied by the man who operates the interlocking appliances at the crossing; that Duplainville crossing is two and three fourths miles west of

Brookfield Junction, and that the railroad track is absolutely straight between the two stations; that at some point before reaching Duplainville the coupling broke between the passenger coach and the balance of the train, but where this occurred is not known, nor did the train crew know of it until the accident occurred; that as the train passed the tower at Duplainville at about 8:15 p. m., it being then quite dark, the operator in the tower saw that the train was parted, and that the gap between the two sections was about seven car lengths, and that the two sections were running at about the same rate of speed, being somewhere about twenty-five or thirty-five miles per hour; that the operator immediately wired the agent at Brookfield Junction and the train dispatcher at Milwaukee of the fact; that as the engine approached Brookfield and had already begun to slow up, and was then from fifteen to twenty-five car lengths from the station, the agent at Brookfield came out upon the platform and gave the break-in-two signal with a lantern; that before this signal the rear portion of the train had collided with the front portion by reason of the slackening of the speed of the front portion, by which collision the ends of the two cars were injured to some extent, and the plaintiff was thrown out of the bunk in the caboose, in which he was sleeping, and seriously injured.

The complaint charged negligence in two respects: first, that the coupling appliances which broke were defective and negligently in use; second, that the defendant negligently failed to ascertain that the train was broken into two parts. At the close of the testimony the defendant moved that a verdict be directed in its favor, and also requested instructions to the effect that no negligence had been proven on the part of the defendant, which motion and instructions were refused. The jury returned a general verdict for the plaintiff, assessing his damages at $3,125, and also returned answers to three special questions submitted by the court of its own motion, by which it found that the coupling appliances which broke

were defective, but that there was no negligence on the part
of the defendant in not discovering the condition of the coup-
ling, and that the defendant's employees were negligent in
not discovering that the train had parted before the collision.
The defendant moved to set aside the general verdict and the
answer to the third question as contrary to the evidence, and
for judgment in its favor, and in the alternative for a new
trial on the same grounds, which motions were denied. Judg-
ment being rendered for the plaintiff upon the verdict, the
defendant appeals.

For the appellant there was a brief by *H. H. Field* and
*Harlow Pease,* and oral argument by *Mr. Field.*

*J. M. Olin* and *H. L. Butler,* for the respondent.

The following opinion was filed June 10, 1904:

WINSLOW, J.   The verdict of the jury eliminated from the
case the claim of negligence in failing to discover the condi-
tion of the defective coupling, thus leaving the failure to dis-
cover the fact that the train had parted as the only ground of
negligence upon which the judgment can rest, and the appel-
lant's main contention is that this latter ground of negligence
is unsupported by the evidence.

There is little dispute in the evidence bearing on this ques-
tion.   The train in question was composed of forty-seven
freight cars besides the engine and tender and the pas-
senger coach and caboose, making its entire length over
one third of a mile.   The passenger coach was next to
the caboose, and the coupling which broke was the coup-
ling between the passenger coach and the box car immedi-
ately in front of it.   The spot where the break occurred
cannot be definitely ascertained, but it had occurred at
some point before the train reached the Duplainville
crossing, because the evidence of the man in charge of
the tower at that place is undisputed to the effect that the two

sections of the train were then about seven car lengths apart, and running along at about the same speed. There is a slight down grade from a point about half a mile west of Duplainville, which continues without substantial interruption to Brookfield Junction. Such breaks are liable to occur in freight trains, and employees are obliged to be watching for them. The train crew consisted of an engineer and fireman, a conductor, one head brakeman, and one rear brakeman. The night was dark, and none of the train crew discovered the break. The engineer looked back as the caboose passed Duplainville, and saw the marker lights on top of the caboose, and supposed that all was right; and he testifies that he could not tell at that distance whether there was a break of seven car lengths in the train or not. The fireman did not look back between Duplainville and Brookfield until the train reached the switch, three quarters of a mile west of Brookfield. The head brakeman rode on the sixth or seventh car from the front of the train, and testifies that he looked back at times between Duplainville and Brookfield, and saw the marker lights on the top of the caboose, and also testifies that from his position it would be impossible to tell whether the train was parted seven car lengths or not. The rear brakeman was not called as a witness, but the conductor, who was in the cupola on the caboose most of the time, testifies that the rear brakeman was on the caboose with his lantern, and the head brakeman testifies that he saw a lantern apparently on the caboose as it was nearing Duplainville. The conductor was out on the caboose from a point about three quarters of a mile west of Duplainville until a point about thirty rods west of the tower, and then went in the caboose, and remained there until reaching a point a mile west of Brookfield, when he came out for a quarter of a mile, and then went in again. The conductor testifies that a man standing on the caboose could not discover that the train had separated for a distance

of seven car lengths on account of the darkness, and that the fact that the passenger coach was just ahead of the caboose made it more difficult to see.

The man in charge of the interlocking switch tower testifies that he saw the train; that it was broken in two; that he does not believe he saw any man or light on the rear part, and that the only light he saw was from the windows of the caboose; that he immediately telegraphed to the agent at Brookfield, informing him of the break, and received a response from the agent at Brookfield in less than a minute. The agent at Brookfield gave the signal indicating a broken train when the engine was from fifteen to twenty-five car lengths from the station, and (as it seems) after the collision had occurred. Certain rules of the company, which were introduced in evidence, provided for signals when a train has parted; also that engine men must look back frequently to see that all is right; that, if a train parts in motion, trainmen must use great care to prevent collision between the parts; that engineers must give the signal for train parted, and keep the forward part in motion until the detached portion is stopped; and that freight conductors and brakemen must be out of their trains, when approaching a station, at least one mile from the station.

It goes without saying that a broken train in motion is both an abnormal and dangerous condition of things. The mere fact that a train is running through the country in this condition doubtless raises a presumption of negligence on the part of defendant, because, if the equipment and management of the train were perfect, such a state of things would not, in the ordinary course of events, be possible, except through the operation of some intervening cause. It is a case of *res ipsa loquitur*. This presumption may, of course, be rebutted and overcome by evidence showing that there was no negligence, and the question whether it has been overcome is the question to be considered.

The appellant's claim is that this presumption has been overcome by evidence showing that the train crew did everything which they were reasonably required to do in the management of the train, and that their failure to discover the break was simply because of the darkness and the length of the train. It may be conceded that it was shown without substantial dispute that both brakemen and the engineer and fireman performed all the duties required of them by the company, and yet it does not necessarily follow that they performed all the duties which they owed a traveler upon the train. The two things may be very different. The company may require no safeguards or very inadequate safeguards; it may not require the train employees to exert any adequate degree of diligence or care to ascertain the condition of the train; but the traveling public will not be remediless in such event simply because the employees have done all that the company required of them. The traveler is entitled to have reasonable precautions taken for his safety, and such precautions are not necessarily measured by the rules of the company. This must be self-evident. One way to show that the precautions taken by the employees in the present case were sufficient would doubtless be to show that the employees operated the train in the usual and customary way, and took all the precautions which trainmen in charge of such trains usually take to prevent such accidents; but no evidence of this kind was introduced, and we are left with simply the rules of the company and the conduct of the trainmen as shown by the evidence to consider. Can it be said as matter of law that the presumption of negligence raised by the fact of the collision has been overcome? We think not. The train was more than a third of a mile long, was running rapidly, and had run many miles without a stop. The night was dark, and the trainmen knew (according to their own testimony) that they could not tell, by looking from either end, whether there was a break of seven car lengths in

the train or not, and they knew that such breaks were liable to happen and they must be on the lookout for them. They knew also that there was no brakeman on the central part of the train. The conductor and rear brakeman also knew that the presence of the long and high passenger coach in front of the caboose made it more difficult to see the condition of the train ahead. The train traveled at least three miles (and how much further cannot be determined) in this broken and dangerous condition, and the trainmen made no effort to ascertain the condition of the train save to look from the ends of the train, knowing at the time that mere looking would not disclose such a break as in fact existed. We think it quite clear that, the accident being shown to have occurred, these facts leave a fair question for the jury to determine as to whether the train employees were negligent, and hence that the court was right in not directing a verdict or setting aside the verdict which was rendered on the ground urged.

The appellant's second contention is that there was error in that part of the charge defining proximate cause. The court, after carefully instructing the jury that the plaintiff could not recover unless the negligence of the defendant's employees was shown and also that such negligence was the proximate cause of the injury, defined proximate cause as follows:

"And by proximate cause I mean the efficient cause, that which produces the injuries complained of, and which, in the light of attending circustances, ought reasonably to have been foreseen by persons of ordinary intelligence and prudence."

This definition is criticized in two respects, and with some reason. It is said that it leaves out the requirement that the injuries must be the natural and probable result, and that it makes the element of foresight apply to the cause, instead of the effect. Taking up the last contention first, it must be said that it appears somewhat hypercritical. It is true that the

sentence is not well constructed, and that it may be read so as to mean that the *cause* ought to have been foreseen, instead of the *effect;* but, on the other hand, it must readily be seen by any reasonable mind that such a requirement is simple nonsense, while to require that the effect should have been foreseen is reasonable and sensible, and that the language is fairly capable of the latter construction. We think, therefore, that there could have been no prejudice in the faulty grammatical construction of the sentence, because it could not have been reasonably understood as claimed. The objection that the element of natural and probable result was omitted presents a more serious question. After the numerous discussions of the subject of proximate cause contained in our recent reports, there seems little excuse for a failure to give an accurate definition to the jury. It was accurately defined, so far as applicable to personal injury cases, in *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 72 N. W. 735, as follows:

"The efficient cause; that which acts first and produces the injury as a natural and probable result, under such circumstances that he who is responsible for such cause as a person of ordinary intelligence and prudence ought reasonably to foresee that personal injury to another may probably follow from such person's conduct."

The ideas here expressed may doubtless be well expressed in other language, but no reason for material variation from this definition is perceived, and we cannot too strongly urge upon trial courts that it be substantially or literally followed in personal injury cases.

Comparing the definition given by the court in this case with the definition just quoted, it will be seen that it varies therefrom in that the words which characterize the injury as a "natural and probable result" are omitted, and that it requires that not alone *some* injury, but *the very* injury which resulted, ought to have been foreseen. As this last variation from the rule is favorable to the defendant, it is not error

which it can take advantage of. *Meyer v. Milwaukee E. R.
& L. Co.* 116 Wis. 336, 93 N. W. 6. Thus the question really
is whether the omission of the words describing the injury
as "a natural and probable result" is prejudicial error. Cer-
tainly, the omission of that *idea* would be prejudicial error,
and so the question really is whether the idea has been omit-
ted. The jury were told that the injuries must be such as, in
the light of attending circumstances, ought reasonably to have
been foreseen by persons of ordinary intelligence and pru-
dence, and the inquiry is whether this does not cover the idea
of natural and probable result; or, in other words, what re-
sults ought to be within the foresight of such a man under the
circumstances. Certainly no legal principle would require
such a man to foresee and provide against unnatural or im-
probable results, and just as certainly it would require him
to foresee the natural and probable results, and thus the two
clauses seem to cover the same idea; and, while we are not to
be understood as approving the omission of the words in ques-
tion from the definition or as holding that they may be safely
omitted in all cases where the clause as to foresight is cor-
rectly given, we are inclined to hold that there is no prejudi-
cial error in their omission in the present case.

Another contention is made which requires attention. The
contract under which the plaintiff shipped his stock provided
that he might accompany his stock upon the train, but that the
defendant should in no event be liable for any personal injury
to him upon defendant's cars or road in an amount exceeding
$500. The trial court charged the jury, in effect, that this
clause was ineffective and not to be considered by the jury,
and this ruling is attacked as erroneous. The plaintiff, though
nominally traveling without payment of fare, was in fact a
passenger for hire, the agreement for his carriage being a
part of the mutual agreement for the carriage of his stock for
hire. *New York C. R. Co. v. Lockwood,* 17 Wall. 357; *Davis
v. C., M. & St. P. R. Co.* 93 Wis. 470, 67 N. W. 16. Being

a passenger for hire, a stipulation entirely exempting the company from liability for injuries caused by the negligence of its servants is void as against public policy. *Davis v. C., M. & St. P. R. Co., supra.* A stipulation limiting the liability of a carrier for loss of personal property shipped to an arbitrary sum, not fixed with reference to the agreed or maximum value of the property, is void. *Ullman v. C. & N. W. R. Co.* 112 Wis. 150, 88 N. W. 41. *A fortiori* a stipulation limiting the liability for injuries to a passenger for hire to an arbitrary sum must also be void. The question would not seem to be open to serious discussion.

*By the Court.*—Judgment affirmed.

A motion for rehearing was denied September 27, 1904.