No. 19,127.

THOMAS J. SMITH, MINOR, ETC., ET AL. *v.*
JAMES J. McCABE.
(358 P. [2d] 1)

Decided December 23, 1960.

Mr. FRANCIS P. O'NEILL, Miss VIRGINIA MALLOY, for plaintiffs in error.

Messrs. Yegge, Bates, Hall & Shulenburg, Mr. Wesley H. Doan, for defendants in error Benedictine Fathers, Inc., Holy Cross Abbey, Inc.

Messrs. Wood, Ris and Hames, for defendants in error James McCabe and Eugene McCabe.

*In Department.*

Opinion by Mr. Justice Knauss.

The parties appear here as they appeared in the trial court. They will be referred to as they there appeared or by name, except that the Benedictine Fathers, Inc., and Holy Cross Abbey, Inc., will be referred to as Abbey School or School.

On February 11, 1958, Thomas J. Smith and defendant, James McCabe, each then fourteen years of age, were boarding students at the Abbey School in Canon City, Colorado.

Defendant, Eugene McCabe, is the father of James McCabe.

The complaint was filed by Orin S. Smith, father of Thomas Smith, as his next friend, for damages for personal injuries inflicted on Thomas Smith, and on his own behalf for expenses incurred by him. Their complaint alleges in substance the following:

1. That on or about February 11, 1958, at the Abbey School, James McCabe, while in the room occupied by him at the school, shot and severely wounded Thomas J. Smith with a gun owned by McCabe, which was kept by McCabe at all times in his room at the school.

2. That Eugene McCabe, well knowing the danger to others of such a dangerous instrumentality as a gun in the hands of his son, purchased and gave the gun to his son sometime prior to February 11, 1958, and supplied his son with ammunition therefor; that Eugene McCabe knew that his son kept the gun continuously in his room.

3. That defendant, Abbey School, well-knowing the dangers of firearms to youths entrusted to its care, custody and control, knew that James McCabe kept the gun and other deadly weapons in his room at the school, and negligently permitted him to have such possession.

4. That as a proximate result of the negligent conduct of each of the defendants, Thomas J. Smith suffered injuries to his damage, and that Orin S. Smith sustained damage on account of medical, hospital and nursing expenses incurred incident to the treatment of Thomas.

On motion of all defendants in the trial court, the allegations of the complaint asserting a claim for relief on behalf of Orin S. Smith, individually, were dismissed. No error having been assigned thereto in the motion for a new trial or asserted here, we consider it no further. The remaining issues were tried to a jury and a verdict returned in favor of all defendants. From the judgment in favor of defendants, plaintiffs bring the case here on writ of error.

The evidence reveals that during the noon hour on February 11, 1958, at the Abbey School, Thomas Smith entered James McCabe's room and immediately lay down on a bottom bunk bed located in the room. When he first entered the room there were three other boys present, including the defendant, James McCabe, who was seated at a table working on a model car. Another student, Jim Conway, removed a revolver owned by McCabe from its holster and pointed it at James McCabe. McCabe turned, took the gun from Conway, reached over and obtained a bullet from the gun belt which was hanging from a bunk post and inserted it in the chamber. McCabe testified that he immediately tried to remove the bullet from the cylinder but was unsuccessful, whereupon he resumed working on his model car and that shortly thereafter the gun accidently discharged striking Thomas Smith in the chest. Thomas Smith testified that he was still lying on the bed when McCabe obtained possession of the gun; that McCabe inserted

the shell in the gun and then pointed it at him. Upon seeing McCabe insert the shell, he became worried, and that with the intent to leave the room, he started to get off the bed when he was shot.

Other witnesses present in the room testified that after McCabe obtained possession of the revolver, Tom Smith got up off the bed, put his leg over a chair near the defendant and said, "Let me get a little bit closer," and that immediately thereafter the gun discharged, the bullet entering the chest of Thomas J. Smith.

Thomas was removed to the local hospital where first aid treatment was administered, and upon request of his parents he was thereafter sent to a hospital in Denver.

Father Peters, the freshman prefect of Abbey School, testified that he rode with Thomas Smith from the school to the hospital in Canon City immediately after Smith was shot, and that during the ride, in response to a question as to what happened, Smith made several statements to him including a statement that "We were playing Russian Roulette."

Father Hilary Vickman, also connected with the School, testified that he accompanied Smith to Denver and saw him the morning after Smith had undergone surgery in the Denver hospital, and that during a conversation Smith stated that he and McCabe had been putting on a sort of show for the other boys in the room; that he (Smith) did not know what had happened, but as a matter of course, as he had done before, he clasped his chest; and that Smith told him that the entire transaction was an accident. Thomas Smith also admitted, while testifying, that he and James McCabe might have pointed the gun at each other on prior occasions; that prior to February 11, 1958, McCabe had put a live round in the gun, then removed it and then pointed it at him; that he knew what the game of Russian Roulette was; that at the time his deposition was taken he admitted he had pointed the gun at other persons when

it had an empty shell in it; that he had pointed the gun at James McCabe when it had an empty shell in it; that he had seen the gun in McCabe's room thirty or forty times between September and Christmas vacation, and that he and McCabe had pointed the gun at each other on occasions when they had been fooling around with the gun playing "big rough man."

All of the parties to this action admit that the school had a rule prohibiting the possession of firearms in the students' rooms and that the school maintained the gun room for the safekeeping of weapons owned by the boys. Witnesses for the defendant School testified that whenever they found a gun in the room of one of the students, contrary to the rule of the school, the weapon was removed from the room and placed in the gun room; that on at least one other occasion, the prefect had removed the revolver in question from McCabe's room and checked it in for him. However, there was other testimony to the effect that McCabe had the revolver in his possession almost continuously; that many times it was either laying on a table in the room in open view or hanging on the bunk post.

Eugene McCabe, father of James McCabe, was called for cross-examination; he admitted purchasing the gun for his son in August of 1957; that at the time his son was past the age of 14 years; that James McCabe had been taught in the use of the gun. McCabe admitted buying ammunition for his son and stated that when the school granted extended vacations, his son brought the gun home with him and that he never had seen the gun in his son's room except on the nights that he took his son back to school.

Plaintiff's argument here is limited to two points:

1. It was error to instruct the jury on the subject of contributory negligence.

2. The court erred in its use of the word "accident" rather than the word "injury" in instructions Nos. 3 and 16.

Did the court err in instructing the jury on the subject of contributory negligence? This question is answered in the negative.

■ Plaintiff argues that there was no evidence in the case upon which to predicate an instruction on contributory negligence. The facts speak for themselves. The jury had before it the prior conduct of the boys in playing a version of "Russian Roulette" with the very pistol by which plaintiff was injured; the testimony of all of the witnesses present concerning what transpired on the day of the accident; the statements of plaintiff after the accident together with the surrounding circumstances as adduced from the record, presented a conflict in the evidence and the inferences drawn therefrom upon which the minds of reasonable men might differ and from which it might fairly be concluded that plaintiff's own conduct contributed to his injury.

"Where fair minded persons may form different opinions and draw different conclusions or inferences even from undisputed facts, the questions of negligence, contributory negligence and proximate cause are for determination by the jury." *Yockey v. Handy,* 128 Colo. 404, 262 P. (2d) 930.

See, also, *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 128 Pac. 460 (1912); *Swanson v. Martin,* 120 Colo. 361, 209 P. (2d) 917 (1949); *Denver Co. v. Wright,* 48 Colo. 366, 107 Pac. 1024; *Colo. Co. v. Chiles,* 50 Colo. 191, 114 Pac. 661; *Williams v. Sleepy Hollow M. Co.,* 37 Colo. 62, 86 Pac. 337.

It was not error to submit the question of plaintiff's contributory negligence to the jury.

Was it prejudicial error to use the word "accident" rather than the word "injury" in certain instructions? This question is answered in the negative.

■ Defendant argues that the use of the term "accident" in the instruction misinformed the jury and inferentially advised them no negligence was involved. The term "accident" has not heretofore been considered by

this court in the sense here used; however, the Supreme Court of Wisconsin has said the meaning of the word "accident" includes the result of human fault held to be actionable negligence — accident as used in the narrow sense does not refer to the result of an actionable negligence, but it is commonly used without any qualifying word in speaking of such result, and so may refer to the result of negligence. *Ullman v. Chicago and N.W. Ry. Co.,* 112 Wis. 150, 88 N.W. 41.

We conclude that no prejudicial error resulted from the use of the word "accident" in the instructions referred to when considered together with the other instructions given.

Concluding as we do that there was sufficient evidence before the jury to justify the conclusion that plaintiff was guilty of contributory negligence, the judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.